which I had forgotten, the precise article ; you must not forget the difference in the nature of the article.   Twenty-five dollars per ton for raw material is one thing and $25 per ton for finished product is another.   The evidence was that $25 a ton was paid for comparatively raw material.]  [9]

Mr. Johnson :  And at Chicago :

Mr. Gross :  And in Philadelphia :

The Court :  You will take into consideration what that price was.

The second point I will refuse as not applicable, except, if you find, as a matter of fact, that these gentlemen did buy cork for a less amount than the contract price.   Whatever it is you will find for the lesser of the two amounts."  [5]

Verdict for defendants with a certificate for defendants for $6,301.52, on which judgment was entered.  Plaintiffs appealed,

*Errors assigned* were (1) the admission of evidence, quoting offer and objection, but not the evidence admitted ; (2, 3) rulings on evidence ; (4–9) instructions of the court, quoting portions of the charge as above, and points and answers.

*William C. Gross, Francis S. Chapron* with him, for appellants.

*John G. Johnson,* for appellees.

PER CURIAM, February 8, 1892.

The first specification of error is not properly assigned, and if it had been it would not have helped the appellant, as the evidence was properly admitted.  A careful examination of the remaining specification fails to disclose error on the part of the court.   The error, if any, was with the jury.

Judgment affirmed.

## Moore, Appellant, v. Miller.

*Ejectment—Evidence of marriage.*

In an action of ejectment where the defendant claims title under a deed in which the grantors are described as man and wife, it is proper to admit evidence that the grantors were married, although it appears that the woman was married eighteen years before to another man, and there is no evidence either of the death or divorce of the first husband.

*Deed—Acknowledgment before United States commercial agent—Married women.*

An acknowledgment of a deed by a married woman before a United States commercial agent in Canada is sufficient to pass her title to land in Pennsylvania.

Argued Jan. 28, 1892.   Appeal, No. 102, Jan. T., 1892, by plaintiff, Charles R. Moore, executor, from judgment of C. P. No. 2, Phila. Co., March T., 1890, No. 310½, on verdict for defendant, Bruno Miller.   Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Ejectment for a lot in Moss street in the Second ward of Philadelphia.

The facts appear by the charge of the court, which was as follows:

" There are some peculiar features about this case as it is brought before you upon the evidence, and I have no doubt you will give it a careful consideration, and endeavor to reach a correct conclusion.   Both of the parties are here claiming title to this real estate, deriving their title from Edward Caldwell, who died in 1859, leaving a wife and two children.   One child was named Elizabeth, and the other afterwards came to be known as Elizabeth Margaret.   Upon his death the real estate descended to these children, subject to a one third interest in the life of the mother.

" The child Elizabeth died when three or four years of age, and her interest descended to her sister, subject to the life estate of the mother.   The mother died in 1882 or 1883, thus terminating her life estate, so that the whole title became vested in the remaining child, Elizabeth Margaret.   It appears that in 1859 a judgment had been obtained against Caldwell, and that nothing was done upon that judgment until 1883, a period as you see of about twenty-four years.   In the latter part of the year 1883, a sci. fa. was issued, upon which judgment was obtained, and there was a sale of the real estate under that judgment, and a purchase by the plaintiff, which constitutes his title.

" That judgment was good as against the heirs of Caldwell, and as against Elizabeth Margaret, and would have given a good title to the plaintiff, unless there had been previously a conveyance by Elizabeth Margaret to a bonâ fide purchaser for value.

" It is contended on the part of the defendant, Miller, that he is such a bonâ fide purchaser. His title, as it has been presented to you, depends upon a conveyance from Arthur Little and Elizabeth M. Little, which was made in the year 1883.

" There was in the first place a letter of attorney constituting Patrick E. Carroll attorney in fact, executed September 11th of that year, which was followed by a deed from Patrick E. Carroll to Thomas J. Carroll in the same month, a conveyance from Thomas J. Carroll to Miller, October 10, 1883.

" The first question that confronts you is, was, or was not, Arthur Little at that time the lawful husband of Elizabeth M. Little, formerly Elizabeth M. Caldwell. The evidence of his being the husband of Elizabeth M. Caldwell at that time is the recognition of her as the wife of Arthur Little, by her relatives and those who knew her, as well as the evidence of papers which have been produced here before you.

" Mr. Satterthwaite testifies that in 1877 or 1878 he drew a lease between the mother who was then Mrs. Moore and this lady as Mrs. Elizabeth M. Little, and was introduced to her by the mother as Mrs. Little.

" Mr. Carroll testifies that the plaintiff here, Moore, spoke of her as Mrs. Little, that he described her in a number of letters which he wrote to her as Mrs. Little.

" She was always spoken of as such, and that Mr. Moore, who as you see was her stepfather, said she was married to Arthur Little. The papers such as have been produced before you describe her as Mrs. Little. One of them is signed by the plaintiff here. That constitutes substantially—I don't pretend to go over all the testimony—but that is in the main the testimony upon which the defendant relies to show that she was at that time the wife of Arthur Little.

" There has been produced before you evidence of the marriage of Elizabeth M. Caldwell to John McFarland. That is, Robert Miller testifies that he was present at the marriage ceremony performed by the Rev. Samuel Durborrow on the seventeenth of September, 1864. There is also a certificate from the board of health, setting forth this marriage. One witness testifies that he saw John McFarland nine months later, in 1865.

" [Now you will observe that that is a period eighteen years

before the time of execution of this deed, which occurred in 1883, and during all that time there is no evidence before you, no real evidence of the existence of John McFarland. One of the witnesses said he heard of him in Pittsburgh in 1885. You will see that it is extremely meagre at the best; that he heard of him; but does not say what are the facts he heard concerning him, and at best it is mere hearsay testimony. But there is nobody produced before you who testifies as to the existence even of John McFarland since that day.] [13]

" Where parties near to and closely related with persons treat them as married people, and present them to their friends as such, there is some evidence of their being married. There is a great meagreness of the testimony on this subject. You will have to do the best you can to ascertain whether if at the time of the execution or this deed, Arthur Little was the legal husband of Elizabeth M. Little. If she was then the wife of John McFarland, and he was a person other than Arthur Little, that deed was void, and the title of the defendant must go with it. If, on the contrary, she was the wife of Arthur Little, and she and her husband conveyed this property to the defendant, and he purchased it bona fide, his title is good.

" That raises the next question, as to the bona fide of the purchase by Bruno Miller. He himself testified that he paid $1,600 for it, and that he did it without notice of any outstanding claim.

" On the other hand the plaintiff says, not that he gave notice to Bruno Miller, but that he went to the house of Bruno Miller, and there stated to his parents that he had this judgment. He then gave them notice not to buy the property. He had heard that Bruno Miller was about to become the purchaser. Now that was not notice to Bruno Miller, but to the parents, and he strengthens it, or endeavors to do so, by saying that at a hearing of the case, the defendant stated that his parents had told him of these facts. You will remember that Bruno Miller denies having heard it from his father, and denies all knowledge of it. If notice was brought home to him, before his purchase, of the outstanding judgment, which was subsequently revived, he was not a bona fide purchaser, but he took it subject to all the risks which arose from the revival and subsequent judgment on that claim. I have now gone over all the facts,

and pointed out to you the principles upon which you will find a verdict.  The questions of fact are entirely for you.

"I am requested by the plaintiff to charge you as follows :

"3. That if the jury find from the evidence that Elizabeth M. Caldwell, the only daughter and heir at law of Edward Caldwell, deceased, was married to John McFarland in September, 1864, there being no evidence of his death or her divorce from him, no title was conveyed by the deed in which Arthur Little joined as her husband, and the verdict must be for the plaintiff.  A. I decline that point. [6]

"4. That there is no evidence of the death of John McFarland or of his divorce.  A. I decline that point. [7]

"5. If the jury find from the evidence that Mr. Carroll was the agent and attorney of both parties, and retained the purchase money to meet the contingencies of this suit, the purchaser is not a purchaser for value, and the verdict must be for the plaintiff.  A. I decline that point. [8]

"8. That if the jury find from the evidence that John McFarland was living in 1885, at the time the witness, Mr. Miller, heard from him, the deed made under the letter of attorney in which he did not unite, is invalid, and will not pass the title to the lot, and the verdict must be for the plaintiff.  A. I affirm that point, if John McFarland was then her husband.  My recollection of the testimony is, that the witness did not say that McFarland was heard from, but that he had heard of him.  But as I said before, all questions of fact are for you to decide. [9]

"9. The acknowledgment of the letter of attorney, in Canada before a United States commercial agent, is invalid, as he was not authorized to take acknowledgments, by any statute of Pennsylvania.  A. I decline that point. [10]

"10. That the acknowledgment is not certified under the official seal of an officer, or person authorized to take acknowledgments of deeds to convey real estate in Pennsylvania. A. I decline that point. [11]

"11. If the jury find from the evidence that the property in dispute was in the possession of a tenant of the plaintiff at the time of the conveyance to the defendant, it was notice to him of the claim of the plaintiff, and he is chargeable with notice of all he could have learned upon inquiry of Mr. Moore.  A. I decline that point. [12]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were, inter alia (6–13) the instructions of the court, quoting portions of the charge as above and points and answers.

*Joseph L. Tull, David C. Harrington* with him, for appellant.

*William W. Ker, Francis H. Thole* with him, for appellee.

PER CURIAM, February 8, 1892.

Judgment affirmed.


## Stewart's Estate.   Bell's Appeal.

*Will—Distribution—Heirs—Limitations.*

Where a testator directs that after the expiration of a particular interest his estate shall go to his " right heirs according to the intestate law of the state of Pennsylvania," he is to be understood as meaning the persons who would have taken at the time of his death and not at the time appointed for their taking, unless the will affords clear and unequivocal evidence to the contrary.   The fact that the person to whom the prior estate is given, though his death is to precede the ultimate limitation, is himself an heir, does not change the result.

*Representation among collaterals.*

As representation does not extend beyond children of uncles and aunts, and grandchildren of brothers and sisters, first cousins take to the exclusion of second cousins.

*Collateral inheritance tax—Presumption of payment.*

After forty-two years, collateral inheritance tax will be presumed to have been paid, not only on the ground of lapse of time, but also from the presumption that the executor did his duty under his oath of office.

Argued Jan. 29, 1892.   Appeal, No. 108, Jan. T., 1892, from decree of O. C. Philadelphia Co., July T., 1879, No. 60, dismissing exceptions to the adjudication of the account of the Pennsylvania Company for Insurance on Lives and Granting Annuities, trustees under the will of Esther Stewart, deceased. Before PAXSON, C. J., STERRETT, McCOLLUM, MITCHELL and HEYDRICK, JJ.

PENROSE, J., filed the following adjudication :

" By her will, proved March 6, 1849, the testatrix, E. Stewart, after giving one half her estate in trust for her sister, Maria